No. 2014-1232

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT


VIRTUALAGILITY INC.,

*Plaintiff-Appellee*,

v.

SALESFORCE.COM, INC., DELL, INC., DR. PEPPER
SNAPPLE GROUP, INC., KIMBERLY-CLARK
CORPORATION, NBCUNIVERSAL, INC., LIVINGSOCIAL,
INC., FEDEX CORPORATION, BMC SOFTWARE, INC.,
BANK OF AMERICA CORPORATION, BANK OF
AMERICA NATIONAL ASSOCIATION, MERRILL LYNCH
& CO., INC., MERRILL LYNCH, PIERCE, FENNER &
SMITH INCORPORATED, FEDEX CORPORATE
SERVICES, INC.,

*Defendants-Appellants*.


Appeal from the United States District Court for the Eastern District of
Texas in case no. 2:13-CV-00011-JRG-RSP, Judge Rodney Gilstrap.


---

## VIRTUALAGILITY'S RESPONSE TO
## DEFENDANTS-APPELLANTS' MOTION TO STAY
## UNDERLING PROCEEDINGS PENDING APPEAL

---

The Court should deny the Defendants-Appellants' motion to stay underlying proceedings pending appeal (Docket No. 13). The standard to obtain a stay pending appeal is exacting, and the Defendants' motion fails on multiple fronts. First, the Defendants do not provide a sufficient reason that this Court should rule ahead of the district court, where the Defendants' co-pending motion to stay pending appeal will be ready for decision next week. Second, the Defendants fail to show that they are highly likely to prevail on the merits of their appeal. Whether to stay a proceeding is within the discretion of a district court, and the court provided ample reasons why a stay was not appropriate in this case. Chief among them was that VirtualAgility and defendant Salesforce are direct competitors. Third, the Defendants' alleged harm that warrants a stay is that they will have to continue defending the lawsuit, which does not constitute irreparable harm as a matter of law. A stay, however, will irreparably harm VirtualAgility because it directly competes with Salesforce. Lastly, the Defendants fail to identify any cognizable public interest that warrants staying the district court action pending appeal. Accordingly, VirtualAgility respectfully requests that the Court deny the Defendants' motion to stay.

## I. BACKGROUND

This appeal arises from a district court's denial of a motion to stay pending completion of Covered Business Method ("CBM") review under Section 18(b) of the Leahy-Smith America Invents Act ("AIA"). 35 U.S.C. § 321; AIA § 18(b), Pub. L. No. 112-29, 125 Stat. 284, 231 (2011).

VirtualAgility and defendant Salesforce are direct competitors in the market for enterprise-level information technology software solutions. VirtualAgility is a small, venture-backed company, and Salesforce is one of the more dominant players in that market.

In January, 2013, VirtualAgility sued Salesforce and a number of its major customers (collectively, "the Defendants") for infringing the patent-in-suit. On May 24, 2013, five days after Salesforce filed a CBM petition with the U.S. Patent & Trademark Office ("PTO"), the Defendants jointly moved to stay the proceedings pending completion of CBM Review. The Patent Appeal & Trial Board ("PTAB") granted the CBM petition in November, 2013. The district court denied the Defendants' motion to stay on January 8, 2014. *VirtualAgility Inc. v. Salesforce.com, Inc.*, No. 2:13-CV-00011-JRG, 2014 U.S. Dist. LEXIS 2286 (E.D. Tex. Jan. 8, 2014). The Defendants appealed and now move for a stay pending appeal.

## II.    APPLICABLE LAW

Courts consider four factors in determining whether to enter a stay pending appeal, the first two of which are the most critical: (1) whether the applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  In addition, the applicant for a stay pending appeal must show that it is impracticable to wait for relief in the district court prior to seeking relief in this Court.  Fed. R. App. P. 8(a)(2); Fed. Cir. R. 8(d).  As detailed below, the Defendants have not shown any reason to justify their extraordinary request for a stay pending appeal.

## III.    THE COURT SHOULD WAIT FOR THE DISTRICT COURT'S DECISION ON THE MOTION TO STAY

The Defendants have failed to show that it would be impracticable to let the district court first rule on the motion to stay pending appeal.  Unlike a motion to stay the execution of a court order, such as an injunction, the Defendants' motion asks this Court to decide how best to manage the district court's docket.  That is an extraordinary request.  The Federal Rules of Appellate Procedure and this Court's rules dictate that the prudent course is

to allow the district court to determine if it should stay the litigation before it. Fed. R. App. P. 8(a)(2); Fed. Cir. R. 8(d). The Court should follow that course here.

The district court will likely rule in due course on the Defendants' motion to stay pending appeal. Noticeably absent from the their motion before this Court is any mention by the Defendants that they filed their motion in the district court on January 17, 2014, five days before they filed their motion to stay in this Court. *See* Fed. R. App. P. 8(d) ("the movant must include in its motion in this court a statement specifically identifying when it filed the motion in the district court"). That motion remains pending before the district court, and the Defendants did not seek to condense the briefing schedule. Thus, under the Local Rules for the Eastern District of Texas, VirtualAgility's response is due on February 3, at which time "the court will consider the submitted motion for decision." Eastern District of Texas Local Rule CV-7(e). There is no reason to have this Court rule on the motion to stay before the district court issues its decision.

The Defendants argue that this Court should rule on their motion to stay because the district court supposedly will not timely rule on the motion. They assert that it took the court "about seven months" to deny the

Defendants' motion to stay pending the completion of CBM review.  Mot. at 7–8.  That argument lacks merit.

First, the Defendants do not accurately portray the proceedings related to their motion to stay pending CBM review.  The Defendants filed their motion to stay pending CBM review almost six months before the PTAB even instituted the CBM proceedings for the patent-in-suit in November, 2013.  Before that time, it was purely speculative as to whether the CBM proceedings would even be initiated.  Notably, when the PTAB did institute CBM proceedings, it was on substantially less grounds than defendant Salesforce had requested.  After receiving notification of the PTAB's decision, it took the district court only about six weeks—over the Holidays no less—to render a detailed 17-page decision, which included an analysis of the PTAB's decision instituting the CBM proceedings as well as the prosecution history of the patent-in-suit.  Considering that the Defendants larded up their briefing on the motion to stay with over 200 pages in exhibits, *See* Docket Nos. 67, 74, 2:13-CV-00011-JRG (E.D. Tex.), and that the PTO's decision was almost 50 pages, *See* Docket No. 105, 2:13-CV-00011-JRG (E.D. Tex.), a six-week time to decision over the Holidays was actually quite fast.

Here, there is no indication that the district court will not timely rule on the Defendants' motion to stay pending interlocutory appeal. Unlike the hundreds of pages submitted with their motion to stay pending CBM review, the Defendants motion is three pages in length and contains a one-page exhibit. *See* Docket No. 127, 2:13-CV-00011-JRG (E.D. Tex.). The motion will be ready for decision next week when VirtualAgility files its response. It is not impracticable for this Court to wait for the district court's ruling.

Similarly, the fact that district court denied the Defendants' motion to stay pending CBM review is insufficient to short circuit the requirements of Rule 8. Mot. at 8. Every appeal by definition involves an adverse court ruling. Regardless, different legal standards apply to motions to stay pending CBM proceedings and motions to stay pending appeal. Because the Defendants have not shown that that it would be impracticable to wait for the district court to rule on their motion to stay pending appeal, their motion before this Court should be denied.

## IV. THE DEFENDANTS FAIL TO SHOW THAT THEY ARE HIGHLY LIKELY TO PREVAIL ON THE MERITS

The Defendants also fail to show that they are highly likely to prevail in this appeal. "The Supreme Court has long recognized that district courts have broad discretion to manage their dockets," which includes the power to

stay or not stay proceedings. *Proctor & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848–49 (Fed. Cir. 2008) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)). As a result, the party appealing an order denying a stay faces a steep burden because the appeal "seeks interference by an appellate court with management of proceedings entrusted to the district court." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983). Despite this high bar, the Defendants claim that there is a "very high likelihood" that they will prevail on appeal. Mot. at 8. The Defendants are simply wrong.

### A. The Plain Language of Section 18(b) Requires a Case-by-Case Stay Analysis

Section 18(b) of the AIA is clear on its face and requires a district court to engage in a factually-intensive case-by-case analysis to determine whether a stay should issue. In determining whether to grant a motion to stay litigation pending resolution of a CBM Review, the statute instructs courts to consider four factors:

1. Whether a stay, or the denial thereof, will simplify the issues in question and streamline trial;

2. Whether discovery is complete and whether a trial date has been set;

3. Whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and

4. Whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

AIA § 18(b)(l).  The district court thus correctly concluded that, contrary to the Defendants' arguments, "Congress did not provide an automatic stay provision" in § 18(b).  *VirtualAgility*, 2014 U.S. Dist. LEXIS 2286, at *6. Rather, "the statute instructs the court to consider all four factors in deciding whether or not to grant a stay."  *Id.*  "Thus, under the statutory stay provision of the transitional [CBM] program, staying patent cases pending CBM review remains squarely within the court's discretion, and 'such determinations must rest on the facts of each particular case.'"  *Id.* at *6–*7 (quoting *Sightsound Techs., LLC v. Apple, Inc.*, No. 11-1292, 2013 U.S. Dist. LEXIS 144919, at *1 (W.D. Pa. June 6, 2013)).

The Defendants ignore that the statute permits a court to deny a motion to stay and instead rely on Senator Schumer's floor statements.  Mot. at 9.  That is inappropriate.  The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says.  When the words of a statute are unambiguous, then, this first canon of construction is also the last: judicial inquiry is complete."  *Connecticut Nat. Bank v. Germain*, 530 U.S. 249,

253–54 (1992). "[W]hen the language of the statute is plain, legislative history is irrelevant." *Zedner v. United States*, 547 U.S. 489, 510–11 (2006) (Scalia, J., concurring-in-part).

Here, the Defendants have not identified any ambiguity in § 18(b) that warrants looking to floor statements by a Member of Congress, which is only permitted as a last resort. *See In re City of Houston*, 731 F.3d 1326, 1333 (Fed. Cir. 2013) ("'[r]esort to legislative history is only justified where the face of the Act is inescapably ambiguous,' and 'to select casual statements from floor debates, not always distinguished for candor or accuracy, as a basis for making up our minds what law Congress intended to enact is to substitute ourselves for the Congress in one of its important functions'") (quoting *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 395–96 (1951) (Jackson, J. concurring)).

The four-factor test in the statute plainly states what factors a court should consider. That is the text that Congress voted on and the President signed. The Court should not place an additional gloss on that text based upon one Senator's remarks on the Senate floor. The Defendants have the burden on appeal to show that the district court erred in findings relating to the four factors recited in § 18(b). As shown below, it is not highly likely that they will meet it.

**B.    The Court Correctly Found That a Stay Was Not Likely to Meaningfully Simplify the Issues**

The district court correctly found, under the first factor of § 18(b), that a stay was unlikely to meaningfully simplify the litigated issues. The Defendants' motion simply recycles the generic simplification arguments that they raised before the district court. The Court considered those arguments and rightly rejected them. The Court instead looked closely at the facts of this case to determine if the CBM proceedings would simplify the litigated issues. The Court analyzed the over twelve-year prosecution history of the patent-in-suit, which included numerous prior art references and a § 101 rejection that arose after the Supreme Court's decision in *Bilski v. Kappos*, 561 U.S. ___, 130 S. Ct. 3218 (2010). *VirtualAgility*, 2014 U.S. Dist. LEXIS 2286, at *6. The Court compared that lengthy prosecution history against the narrow issues raised in the CBM proceedings: the proceedings raise § 101 issues and only one prior art patent, the Ito patent. *Id.* at *6–*10. Based on that comparison, the Court found that it was unlikely that the CBM proceedings would simplify the litigation.

The Court first found that the single prior art reference raised in the proceeding was unlikely to simplify the invalidity issues. "Given the thoroughness of the PTO's prior examination" of the patent-in-suit, "during which time more than sixty prior art references were considered, the Court is

10

not persuaded that the Ito patent, by itself, would invalidate all or a substantial number of asserted claims." *Id.* at *10. Moreover, because the Defendants rely on additional prior art in the litigation that they did not place at issue in the CBM proceedings, the Court rightly found that "the benefit derived from the PTAB's consideration of the Ito patent, as the only prior art reference now before the patent office, is therefore marginal." *Id.*

Similarly, the Court found that the § 101 issues in the CBM proceedings were unlikely to simply the litigation. The Court provided three reasons: (1) the PTO had already resolved § 101 issues in granting the patent-in-suit; (2) the asserted claims are likely patent-eligible under current case law; and (3) the uncertainty surrounding § 101 jurisprudence made it unlikely that the CBM proceedings would meaningfully simplify this litigation. *VirtualAgility*, 2014 U.S. Dist. LEXIS 2286, at *11–*17.

The Court then weighed these findings, which the Defendants do not substantively challenge, against the generic simplification arguments that the Defendants raise here. In total, the Court found that the simplification of the issues factor was "essentially neutral, if not slightly against, granting a stay in this case" after "weighing the limited benefit derived from the PTAB's prior consideration of the single prior art reference (the Ito patent) against the substantial uncertainty involved in all other aspects of the CBM review,

including the § 101 determination and further in view of the two additional prior art references not before the PTAB." *Id.* at *17. The Defendants fail to show any error in that analysis.

### C. The Court Did Not Err in Weighing the Status of the Case

The Defendants fault the court for finding that the status of the case factor only "weigh[ed] in favor of granting a stay," *VirtualAgility*, 2014 U.S. Dist. LEXIS 2286, at *17, instead of "heavily" favoring a stay, Mot. at 10–11. Such a minor quibble with the district court's opinion is not reversible error. The "weighing of the benefits of issuing a stay versus any added expenses resulting from the stay" lies within the discretion of the district court. *VirtualAgility*, 2014 U.S. Dist. LEXIS 2286, at *17–*18 (quoting *Broad. Innovation, L.L.C. v. Charter Commc'n, Inc.*, No. 03-cv-2223-ABJ-BNB, 2006 U.S. Dist. LEXIS 46623, at *11 (D. Colo. July 11, 2006)). Considering the state of the case, the Court reasonably found that "the benefits of a stay at this relatively early stage of the proceedings are outweighed by various other considerations." *Id.* at *18. The Defendants fail to show any error in that weighing.

**D.    The Court Correctly Found That a Stay Would Prejudice VirtualAgility**

The Defendants spend only three sentences in their motion discussing the undue prejudice to VirtualAgility flowing from a stay.  Mot. at 11.  But prejudice to VirtualAgility was the key factor before the district court in deciding the motion to stay.  The Court devoted almost five pages of its Order to this statutory factor, ultimately determining that "a stay would unduly prejudice VirtualAgility both in the marketplace and in this litigation," which "weigh[ed] heavily against granting a stay." *VirtualAgility*, 2014 U.S. Dist. LEXIS 2286, at *25.  The Court first found that defendant Salesforce and VirtualAgility "directly compete in at least the enterprise cloud computing market targeting public sector entities." *Id.* at *21.  As a result, the Court held that a stay would unduly prejudice VirtualAgility. *Id.* at *22–*24.

In their motion, the Defendants assert that "the record lacks facts sufficient to show that any harm from a stay cannot be addressed monetarily."  Mot. at 11.  That is flat wrong.  The Court expressly found that VirtualAgility and Salesforce directly compete in the same market because, among other things, they have participated in the same government bid process for enterprise software services. *VirtualAgility*, 2014 U.S. Dist. LEXIS 2286, at *21–*22.  "Direct competition in the same market is

certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude." *Presido Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012). Accordingly, a stay "will leave VirtualAgility with no recourse during the intervening time against unauthorized use of its patented invention." *VirtualAgility*, 2014 U.S. Dist. LEXIS 2286, at *22. In addition, the Court found that "[t]he loss of market share and consumer goodwill is particularly high in the growing market of enterprise cloud-computing, where contractors and governmental agencies are developing lists of preferred vendors." *Id.* at *22. Thus, the Court determined that even a one-year delay in the resolution of the case had a real potential to unduly prejudice VirtualAgility:

> [T]he Court is not persuaded that potential loss of market share and consumer goodwill during the intervening one year would necessarily impose only minimal prejudice on VirtualAgility. It is undisputed that VirtualAgility is and has been a small company with private investors and limited resources. Being left with no recourse against the infringing acts of much larger companies such as Defendants, even only for a year, may substantially injure VirtualAgility's business such that it becomes "impossible to restore [its] exclusive position by an award of damages and a permanent injunction."

*Id.* at \*23–\*24 (quoting *Polymer Techs., Inc. v. Birdwell*, 103 F.3d 970, 975–76 (Fed. Cir. 1996)).   In addition to that prejudice, the Court also found a "heightened" possibility of evidence loss during the stay period based on the age of certain witnesses, including the attorney who prosecuted the patent-in-suit who is "now beyond age seventy." *Id.* at \*24.

In sum, the Court concluded that VirtualAgility would be greatly prejudiced by any stay due to the "irreparable loss of market share, erosion of goodwill and potential loss of key witnesses." *Id.* at \*25.   The Defendants fail to meaningfully contest in their motion any of those findings or the Court's determination that, based on those facts, the prejudice to VirtualAgility "weigh[ed] heavily against granting a stay." *Id.*

## E.     The Court Did Not Err When it Analyzed the Potential Burden on the Court and the Parties

The Court did not err when it rejected the Defendants' generic arguments that the stay will reduce the burden on the parties and the Court. The Court addressed the Defendants' arguments, "which substantially overlapp[ed]" with the Defendants' generic arguments regarding the simplification of the issues. *VirtualAgility*, 2014 U.S. Dist. LEXIS 2286, at \*27.   The Court again focused on the facts of this case.   It found that "given the thoroughness of the PTO's prior examination" of the patent-in-suit, "the

single new prior art currently before the PTAB, and the uncertainty of the PTAB's § 101 determination, the Court is not convinced that the CBM review will cancel all or even a substantial number of the asserted claims." *Id.* Similarly, the Court found that "the CBM review will not substantially alleviate the existing demands upon the Court and the parties" with respect to the two prior art references that the Defendants characterized as central to the litigation, "as neither reference is before the PTAB." *Id.* at *28. As a result, the Court held that "the burden on this Court and the parties, when measured in context of the overall course of this litigation, will not be substantially lessened by a stay." *Id.*

The Defendants do not challenge those findings. Instead, they assert that a stay pending completion of the CBM proceedings is warranted because the stay will *necessarily* reduce the burden on the Court and the parties. Mot. at 11. The district court, however, considered that argument and actually accepted it as part of its stay analysis. The Court ultimately concluded that the burden of litigation factor slightly weighed *in favor of a stay* because, despite the stay's lack of potential to simplify the litigated issues, a stay would reduce the litigation burdens due to characteristics that are "inherent to all CBM reviews." *VirtualAgility*, 2014 U.S. Dist. LEXIS 2286, at *28. Because § 18(b) endorses a case-by-case analysis, however,

the Court held that the "relief from burden inherent to all CBM reviews cannot reasonably serve as the sole basis for tipping the fourth factor in favor of granting a stay." *Id.* Otherwise, § 18(b) would provide an automatic stay, contrary to the plain language of the statute. *Compare* AIA § 18(b) (delineating four factors upon which the court should "base[]" its decision) *with* 35 U.S.C. § 315(a)(2) (providing for an "automatic[] stay[]" pending *inter partes* review in certain circumstances).

* * * * *

In total, the district court weighed the four factors and concluded that, while two of the factors weighed in favor of granting the stay, the simplification of the issues factor and the undue prejudice factors more strongly weighed in favor of denying the stay. *VirtualAgility*, 2014 U.S. Dist. LEXIS 2286, at *29. Thus, on balance, the district court properly denied the Defendants' motion. The Defendants have not shown any substantive error in that analysis, let alone a high likelihood of success on appeal. Their motion to stay pending appeal should be denied accordingly.

## V.    THE DEFENDANTS CANNOT SHOW IRREPARABLE HARM

The Defendants cannot show that continuing to litigate this case before the district court will cause them irreparable harm. It is black-letter

law that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *FTC v. Std. Oil Co.*, 449 U.S. 232, 243–44 (U.S. 1980) (quoting *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)); *see also ActiveVideo Networks, Inc. v. Verizon Communs., Inc.,* 694 F.3d 1312, 1337 (Fed. Cir. 2012) ("Litigation costs are undoubtedly undesirable and may take funds away from other endeavors, but they are not an irreparable harm in an injunction analysis."). The Defendants' *sole* allegation of irreparable harm is the "required completion of every litigation deadline" while the appeal is pending. Mot. at 12. That alleged harm is insufficient as a matter of law.

## VI.    A STAY WILL PREJUDICE VIRTUALAGILITY

In contrast, a stay pending appeal will prejudice VirtualAgility. As explained above, the district court found that even a short stay has the potential to irreparably harm VirtualAgility because it directly competes with, and is much smaller than, Salesforce. *VirtualAgility*, 2014 U.S. Dist. LEXIS 2286, at *20–*24. That harm will occur if the Court grants the Defendants' motion to stay pending appeal. Moreover, a stay pending resolution of this appeal will require the district court to reset the claim construction hearing, pretrial conference, and trial settings, as well as the

discovery deadlines.  Depending on the Court's caseload, those dates could get substantially delayed, which will further prejudice VirtualAgility.

## VII.  THERE IS NO PUBLIC INTEREST IN STAYING THE PROCEEDINGS PENDING APPEAL

Lastly, there is no public interest in staying the district court's proceedings pending appeal.  The public interest actually points in the opposite direction.  The public has a "general interest in the judicial protection of property rights in inventive technology," *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013), and a stay pending appeal will nullify that interest during the stay period.

The Defendants fail to point to any public interest that will benefit from the stay.  Instead, they point to *private* interests—their interest and the interest of third-parties' to avoid litigation costs.  Mot. at 13–14.  Those are not *public* interests.

Finally, the Defendants argue, as a "matter of policy," that a denial of its motion could signal to certain district courts that they should deny motions to stay pending completion of CBM proceedings "in practically every case."  Mot. at 14.  That is quite a stretch.  Section 18(b) provides a case-by-case framework to determine whether a stay is appropriate.  The Court's ruling on the merits of the Defendants' appeal will likely shed light

on that framework. But the Court's expedited ruling on a side issue in the appeal is unlikely to "signal" anything to anyone. *See ePlus, Inc. v. Lawson Software, Inc.*, 431 Fed. Appx. 920, 920 (Fed. Cir. 2011) ("Without prejudicing the ultimate disposition of this case by a merits panel, we conclude based upon the papers submitted that Lawson has not made a sufficient showing to obtain a stay of the district court's injunction pending appeal."). There is no public interest that weighs in favor of a stay.

## VIII.    CONCLUSION

For the foregoing reasons, VirtualAgility respectfully requests that the Court deny the Defendants' motion to stay.

DATED: January 28, 2014.          Respectfully submitted,

_____
CHRISTIAN J HURT

**D. NEIL SMITH,** Attorney in Charge
TEXAS STATE BAR NO. 00797450
**EDWARD CHIN**
TEXAS STATE BAR NO. 50511688
**ANDREW J. WRIGHT**
TEXAS STATE BAR NO. 24063927
**KIRK VOSS**
TEXAS STATE BAR NO. 24075229

CHRISTIAN HURT
TEXAS STATE BAR NO. 24059987
**NIX PATTERSON & ROACH, L.L.P.**
5215 N. O'Connor Blvd., Suite 1900
Irving, Texas 75039
972.831.1188 (telephone)
972.444.0716 (facsimile)
dneilsmith@mac.com
edchin@me.com
andrewjwright@me.com
kirkvoss@me.com
christianhurt@nixlawfirm.com

DEREK GILLILAND
TEXAS STATE BAR NO. 24007239
**NIX PATTERSON & ROACH, L.L.P.**
205 Linda Drive
Daingerfield, Texas 75638
903.645.7333 (telephone)
903.645.5389 (facsimile)
dgilliland@nixlawfirm.com


**ATTORNEYS FOR PLAINTIFF-
APPELLEE VIRTUALAGILITY,
INC.**

# CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellee, Christian J. Hurt, certifies the following:

1. The full name of every party or amicus represented by me is: VirtualAgility Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: None.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: None

4. The names of all law firms and partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are: Nix Patterson & Roach, LLP; Andrew Joseph Wright; Christian J. Hurt; Derek Tod Gilliland; Edward K. Chin; Kirk Austin Voss; Nelson James Roach; Robert Winn Cutler; David Neil Smith.

DATED: January 28, 2014.                    Respectfully submitted,

_____
CHRISTIAN J HURT
*Attorney for Plaintiff-Appellee*

## CERTIFICATE OF SERVICE

On this 28th day of January, 2014, I electronically filed the foregoing

**VIRTUALAGILITY'S RESPONSE TO DEFENDANTS-**

**APPELLANTS' MOTION TO STAY UNDERLYING PROCEEDINGS**

**PENDINGS APPEAL** with the Court using the CM/ECF system. The

following counsel are registered CM/ECF users and will be served by the

appellate CM/ECF system.

Jose C. Villarreal
Wilson Sonsini Goodrich & Rosati, P.C.
900 S. Capitol of Texas Hwy, Las Cimas IV, 5th Floor
Austin, Texas 78746
(512) 338-5400
(512) 338-5499 (Fax)
Email: jvillarreal@wgsr.com

Larry K. Shatzer
Wilson Sonsini Goodrich & Rosati, P.C.
1700 K Street, NW, Fifth Floor
Washington, D.C. 20006
(202) 973-8803
(202) 973-8899 (Fax)
Email: lshatzer@wsgr.com

Kevin J. Meek
Baker Botts
98 San Jacinto Blvd
Suite 1500
Austin, Texas 78701-4078
Email: kevin.meek@bakerbotts.com

Darryl J. Adams
Kimberly-Clark Corporation
Baker Botts

98 San Jacinto Blvd
Suite 1500
Austin, Texas 78701-4078
Email: darryl.adams@bakerbotts.com


_____
Christian J. Hurt
*Attorney for Plaintiff-Appellee*